# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 19-34V
### March 3, 2021

```
* * * * * * * * * * * * * * * * * * * * * * * *
                                              *
                                              *
SUSAN TEHENNEPE,                              *     UNPUBLISHED
                                              *
                Petitioner,                   *     Findings of Fact; Onset;
                                              *     Influenza Vaccine; Shoulder Injury
v.                                            *     Related to Vaccine Administration
                                              *     ("SIRVA").
SECRETARY OF HEALTH AND                       *
HUMAN SERVICES,                               *
                                              *
                Respondent.                   *
                                              *
* * * * * * * * * * * * * * * * * * * * * * * *
```

*Leah Durant, Law Offices of Leah V. Durant, PLLC, Washington, DC, for Petitioner*
*Voris Johnson, U.S. Department of Justice, Washington, DC, for Respondent*

## RULING ON ONSET[1]

**Oler**, Special Master:

On January 4, 2019, Ms. Susan TeHennepe ("Petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, *et seq*.[2] (the "Vaccine Act" or "Program").  The petition alleges that she suffered from a Shoulder Injury

---

[1] Because this unpublished Ruling contains a reasoned explanation for the action in this case, I intend to post it on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** However, the parties may object to the Ruling's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Ruling will be available to the public. *Id.*

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755.  Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

Related to Vaccine Administration ("SIRVA") as a result of the influenza vaccine she received on October 11, 2017.  Pet. at 1, ECF No. 1.

After carefully considering the testimony, the medical records, and affidavits, I find that Petitioner's left shoulder/arm pain began before her vaccination.

## I.   Procedural History

In support of her Petition, Petitioner filed medical records and massage therapy records on January 14, 2019 (Exs. 1-5), April 24, 2019 (Ex. 6), June 24, 2019 (Ex. 8), October 30, 2020 (Ex. 15), and December 3, 2020 (Ex. 22).  Petitioner filed an affidavit on April 24, 2019.  Ex. 7. Petitioner filed supplemental affidavits on June 24, 2019 (Ex. 9), and on December 1, 2020 (Ex. 16).

On December 11, 2019, Chief Special Master Corcoran held a status conference.  *See* Scheduling Order of December 13, 2019, ECF No. 17.  At this conference, Respondent raised concerns regarding handwritten alterations that had been made to Petitioner's massage therapy records.  *Id.* at 1.  These alterations bear on the disputed issue regarding whether Petitioner's injuries pre-dated her vaccination.  *Id.*

This case was transferred to me on January 29, 2020.  ECF No. 23.  On February 26, 2020, Respondent filed his Rule 4(c) Report, stating that "this case is not appropriate for compensation under the terms of the Vaccine Act."  Resp.'s Rep. at 1, ECF No. 24.  Contemporaneous with his Report, Respondent filed a status report noting several instances where the massage therapy records were altered.  ECF No. 25 (Feb. 26, 2020).  Respondent stated that:

> It is not credible to [R]espondent that Ms. Rosenblum would have consistently, on numerous occasions over the course of months and years, incorrectly documented that [P]etitioner was complaining of left arm pain if, in fact, she was instead complaining of right arm pain.  Respondent therefore asks the Court to ignore the alterations made by Ms. Rosenblum and find that the records as originally written, contemporaneously at the time of treatment, are reliable and controlling.

ECF No. 24 at 3.  Respondent further stated that, "In the event [the] Court believes it is necessary to further develop the factual record before making a  ruling on this issue, then [R]espondent requests a fact hearing and the opportunity to question both [P]etitioner and Ms. Rosenblum."  *Id.*

On June 16, 2020, I held a status conference in this case.  I explained to Petitioner's counsel, Ms. Durant, that I had concerns regarding the alteration of Petitioner's massage therapy records (Exhibits 5, 6, and 8) and would like to examine these records myself.  I therefore asked Ms. Durant to mail original copies of these records to my chambers.  *See* Scheduling Order of June 16, 2020, ECF No. 28.  Ms. Durant agreed.  *Id.*  On July 16, 2020, Petitioner filed electronic versions of these original massage therapy records.  ECF No. 29, Exs. 12-14.  On August 12, 2020, my law clerk reached out to Ms. Durant to ascertain the location of the original records, as they had not yet been received by my chambers.  *See* Informal Remark of September 28, 2020.  Ms.

Durant stated that the "records were mailed via first-class US mail and were hand delivered by myself to the US post office." *Id.* To date, these original records have not been received.

On September 25, 2020, I held a status conference in this case to discuss the altered massage therapy records. *See* Scheduling Order of September 30, 2020, ECF No. 31. I informed Ms. Durant that I did not find the alterations credible and I was inclined to credit the records as originally written as reliable and controlling. *Id.* at 4. I further informed Ms. Durant that, given my skepticism regarding the alterations, I did not afford much weight to Ms. Rosenblum's corrections. *Id.* Ms. Durant indicated that even with the altered massage therapy records, Petitioner believed that enough evidence existed to pursue her case. *Id.* Ms. Durant asked to file an expert report in order to further Petitioner's case. *Id.* The Secretary's attorney, Mr. Johnson, indicated that, regardless of the filing of any expert reports, he would be filing a good faith/reasonable basis objection in this case. *Id.*

In the order following this status conference, I indicated that the veracity of the massage therapy records needed to be ascertained prior to the filing of any expert reports. I therefore ordered the parties to file a joint status report regarding their availability for a fact hearing to be conducted in December 2020 where Petitioner and Ms. Rosenblum would be made available to testify. *See* Scheduling Order of September 30, 2020.

I held a fact hearing on December 8, 2020, via WebEx to determine the date of onset of Petitioner's shoulder pain. Ms. Leah Durant appeared on behalf of Petitioner and Mr. Voris Johnson appeared on behalf of Respondent. I heard testimony from Petitioner, Lisa Rosenblum, Jeffrey TeHennepe, Erin Short, Karen Brummer, Patricia Johnson, and Vicky Tataryn.

After the fact hearing, I asked Petitioner to file additional documentation. On January 25, 2021, Petitioner filed her text messages with Ms. Rosenblum, her emails with Ms. Rosenblum, and checks that she wrote to Ms. Rosenblum. *See* ECF No. 46. Petitioner also filed the records currently possessed by Ms. Rosenblum as Ex. 30.

On March 1, 2021, the parties filed a joint status report indicating that the record was complete for a determination on onset. ECF No. 48.

## II.    Records and Testimony Applicable to the Issue of Onset

### A.  The Unaltered Medical Records

Petitioner received the flu vaccine in her left deltoid on October 11, 2017. Ex. 1 at 1-2.

On January 9, 2018, Petitioner presented to Dr. Karen Larson for colon cancer screening. Ex. 4 at 14. There is no indication that Petitioner mentioned shoulder pain during this visit.

On February 13, 2018, Petitioner presented to Dr. Larson for an office visit. Ex. 4 at 13. The medical records indicate that Petitioner was at high risk for bilateral glaucoma. *Id.* Dr. Larson started her on Latanoprost and directed her to put one drop in each eye in the evening. *Id.* Petitioner did not mention shoulder pain during this appointment.

3

On February 16, 2018, Petitioner presented to Dr. Larson. That record indicates that Petitioner complained of pain in the upper left biceps which started "a few months ago after getting her flu shot." Ex. 4 at 11.

On February 23, 2018, Petitioner presented to Tennessee Orthopaedic Alliance for pain and limited range of motion that started "a couple days after flu shot." Ex. 3 at 31.

Petitioner presented to her initial PT session on February 26, 2018. Ex. 2 at 6. The Assessment portion of the record states, "Pt is a 67 y.o. female that presents to PT with c/o left shoulder pain due to insidious onset on 10/15/17 following flu shot to left shoulder a few days prior." *Id.* She attended a total of four visits and was discharged from PT on March 23, 2018, due to financial limitations. *Id.* at 25.

### B. The Massage Therapy Records and Related Affidavits/Testimony

Petitioner began seeing Ms. Rosenblum for massage therapy in 2009, although no records before 2014 were filed. *See* Ex. 10 at 1 (hereinafter "Rosenblum affidavit"). Petitioner filed massage treatment records dating from 2014 through 2017. She filed three sets of these records: records from 5/2/2014 through 11/4/2016 (Ex. 6); records from 12/3/2016 through 8/23/2017 (Ex. 8); and records from October 2017 through December 2017 (Ex. 5). Each of these sets of records contain alterations. Exhibits 6 and 8 were altered to change the location of massage treatment from the right shoulder to the left shoulder. Exhibit 5 was altered in a different way and will be discussed separately.

#### 1. Exhibits 6 and 8

The first record of Petitioner visiting Ms. Rosenblum was on May 2, 2014. Ex. 6 at 1. Exhibit 6 in its totality contains 14 alterations. Each of these alterations noted below changed the site of massage treatment from the left side to the right side.

- Entry of May 29, 2014 is altered to read "addressed some [sic] found in R shoulder girdle." The original entry reads "addressed some [sic] in L shoulder girdle"
- Entry of June 30, 2014 is altered to read "more emphasis on R side." The original entry reads "more emphasis on L side."
- Entry of August 28, 2014 is altered to read "[e]xtra focus on upper body [sic] R shoulder girdle." The original entry reads "[e]xtra focus on upper body [sic] L shoulder girdle."
- Entry of May 30, 2015 is altered to read "Tight in traps, biceps R side." The original entry reads "Tight in traps, biceps L side."
- Entry of June 27, 2015 is altered to read "tightness shoulder girdle R side." The original entry reads "tightness shoulder girdle L side."
- Entry of August 29, 2015 is altered to read "Xtra focus on R arm w/ tuning fork…" The original entry reads "Xtra focus on L arm w/ tuning fork…"
- Entry of November 7, 2015 is altered to read "tight muscles in R trap + biceps." The original entry reads "tight muscles in L trap + biceps."

4

- Entry of November 20, 2015 is altered to read "polarity therapy w/tuning fork on acupressure [sic] especially R side." The original entry reads "polarity therapy w/tuning fork on acupressure [sic] especially L side."
- Entry of January 22, 2016 is altered to read "R side has less ROM." The original entry reads "L side has less ROM."
- Entry of January 30, 2016 is altered to read "move stagnant energy especially R side." The original entry reads "move stagnant energy especially L side."
- Entry of April 23, 2016 is altered to read "muscle tension R side." The original entry reads "muscle tension L side"
- Entry of June 27, 2016 is altered to read "some soreness in R arms." The original entry reads "some soreness in L arms."
- Entry of August 20, 2016 is altered to read "gentle stretches R side." The original entry reads "gentle stretches L side."
- Entry of November 4, 2016 is altered to read "R shoulder – arm sore." The original entry reads "L shoulder – arm sore."

Ex. 6 at 1-3.

Like Exhibit 6, Exhibit 8 also contains multiple alterations (eight total), changing the treatment situs from left to right.

- Entry of December 3, 2016 is altered to read "has had right upper arm from elbow to deltoid soreness." The original entry stated, "has had left arm from elbow to deltoid soreness."
- Entry of January 7, 2017 is altered to read "worked [e]xtra on bicep; tricep + deltoid – right side." The original entry stated, "worked [e]xtra on bicep; tricep + deltoid – left side."
- Entry of May 9, 2017 is altered to read "some pain still in R arm." The original entry stated, "some pain still in L arm."
- Entry of May 23, 2017 is altered to read "full body but focused on R arm." The original entry stated, "full body but focused on L arm."
- Entry of June 14, 2017 is altered to read "upper right arm still sore." The original notation is illegible.
- Entry of July 5, 2017 is altered to read "pain in right arm." The original notation stated, "pain in left arm."
- Entry of July 26, 2017 is altered to read "client ROM – R arm limited." The original notation stated, "client ROM – L arm limited."
- Entry of August 23, 2017 is altered to read "continued pain in right shoulder/arm." The original notation stated, "continued pain in left shoulder/arm."

Ex. 8 at 1-3.

Petitioner and Ms. Rosenblum explained these altered records both in their affidavits and during their testimony at the fact hearing. According to Ms. Rosenblum, when Petitioner requested her records in 2019, Petitioner noticed that they were incorrect. Rosenblum Affidavit at 1. According to Ms. Rosenblum, Petitioner then reminded her that she had received treatment for her right arm and not her left. *Id.* Ms. Rosenblum agreed that this was the case and altered the records accordingly. *Id.* Ms. Rosenblum stated, "I was not asked to make these changes by Sue

TeHennepe or anyone else." *Id.* During the hearing, Ms. Rosenblum testified that the indication of left arm treatment "was totally just an oversight on my part. When I looked at those records again, I realized that totally I had made an error there, and I corrected those. I stand by what the corrections are, because they are totally the truth." Tr. at 9.

Ms. Rosenblum provided additional testimony on this point. First, Ms. Rosenblum stated that she tries to complete her treatment notes the same day as treatment or a couple of days afterwards. Tr. at 18. Ms. Rosenblum additionally stated that after reviewing Petitioner's file, she realized that she had made an error and then went back to make the corrections. During cross examination, she testified as follows:

> **Q** And by my count, there were approximately 20 or 25 instances dating back to 2014 in which you changed your notes to indicate that you provided treatment to the right shoulder rather than the left. Is ... it your testimony that you simply made a mistake on every single one of those occasions?
>
> **A** That would be my testimony, that -- yes.

Tr. at 19. Further, Ms. Rosenblum was not able to provide any meaningful answer as to what it was about those records that triggered her memory that she had made these errors. *See* Tr. at 9-11.

Interestingly, there were several entries on Exhibit 6 that were *not* altered and still indicate that Petitioner was treated for left shoulder pain prior to her vaccination.

- Entry of February 25, 2015: "Xtra work on L shoulder for better ROM."
- Entry on February 26, 2016: "Xtra work today w/ cross-fiber friction to gently loosen Left traps…"
- Entry of May 26, 2016: "Xtra on upper L arm."
- Entry of October 1, 2016: "client has had some days less ROM in left arm/shoulder area."

Ex. 6 at 2-3.

I asked Ms. Rosenblum about several of these specific entries during the fact hearing. She testified that these entries did not represent an oversight on her part but instead correctly indicate that Petitioner received treatment on her left arm on those particular occasions. *See* Tr. at 32. Ms. Rosenblum was unable to explain how she could remember (several years after the fact) that Petitioner received treatment for left arm pain on these specific occasions, and treatment for right arm pain every other time.

2. Exhibit 5

Petitioner first filed this exhibit on January 14, 2019. The pertinent part of this version of Exhibit 5 indicates that Petitioner visited Ms. Rosenblum for massage treatment on October 12, 2017, which is one day after Petitioner's allegedly causal vaccination.

I asked Petitioner to file the originals of each of the massage therapy records. Petitioner, through her attorney, filed Exhibit 12, which is the original of Exhibit 5, on July 16, 2020. Exhibit 12 indicates that Petitioner received massage treatment not on October 12, 2017, but on October 2, 2017. I have attached a portion of both exhibits for clarity:

**Massage Therapy Treatment**

Client: Sue Tettennepe       DOB: 6-14-50

Date: 10-12-17       30m 60m (90m) 120m (other) _____

Treatment Notes: Full Body – Moderate pressure – client noted having pain localized in left arm – worked extra on left deltoid/bicep/tricep area to loosen tightness in muscles to improve ROM.

Treatment Plan: Suggest ice may help with discomfort in arm to reduce any inflammation – Next appt set

Ex. 5 at 1.

**Massage Therapy Treatment**

Client: Sue Tettennepe       DOB: 6-14-50

Date: 10-2-17       30m 60m (90m) 120m (other) _____

Treatment Notes: Full Body – Moderate pressure – client noted having pain localized in left arm – worked extra on left deltoid/bicep/tricep area to loosen tightness in muscles to improve ROM.

Treatment Plan: Suggest ice may help with discomfort in arm to reduce any inflammation – Next appt set

Ex. 12 at 1. Petitioner and Ms. Rosenblum both testified about this exhibit during the fact hearing. Petitioner testified that she obtained Exhibit 5 from Ms. Rosenblum and then submitted that exhibit

to her attorney.  Tr. at 78.  Ms. Rosenblum confirmed this point; she testified that she provided Exhibit 5 to Petitioner.  Tr. at 14-15.  Unlike Exhibit 5, Ms. Rosenblum provided Exhibit 12 directly to Petitioner's attorney in July of 2020.  Tr. at 23-24.

When asked to explain the discrepancy between Exhibits 5 and 12, Ms. Rosenblum testified that she noticed that Exhibit 12 was inaccurate after looking through her calendar to perform something analogous to an audit of her records.  Tr. at 19, 27.

> THE WITNESS: I guess you could call it an audit. I do go back and look of when people were in, of when they were in last and when they were in even the previous year or two.
>
> THE COURT: Why do you do that?
>
> THE WITNESS: Because some people will get busy and not make their appointments, and I just get curious sometimes about, you know, people I've seen, so I'll go back and look and see when I worked on them last, when they were in, how many times they were in the prior year. That's not uncommon for me to do that.

Tr. at 27.  Ms. Rosenblum was unsure of when she performed this audit and when she changed the date on the exhibit from October 2, 2017 to October 12, 2017.

Petitioner disavowed any knowledge as to how this exhibit was changed.  Tr. at 79.  She additionally testified that she did not speak with Ms. Rosenblum about the change.  *Id.*

### C.  Testimony Concerning Onset

Petitioner testified that she received her flu shot on October 11, 2017 and woke up the next morning with pain in her left arm.  Tr. at 42-43.  Specifically, she described the area as red, swollen, and painful.  *Id.* at 43.  She testified that she saw her massage therapist that day and because the area was so sensitive, Ms. Rosenblum could not work on it very much at all.  *Id.* at 43-44.  Petitioner testified that she had experienced prior left shoulder pain but stated that the pain was nothing like the pain she experienced after her flu shot.  *Id.* at 45.

Petitioner described the pain as being in her upper arm, and not in her shoulder.  Tr. at 51.  She stated, "my pain has never been in the actual shoulder joint" *Id.* at 87; and "It feels like it's in the muscles and the tendons. It's not in my shoulder joint." *Id.* at 91.

Petitioner testified that she did not mention left shoulder pain to Dr. Lawson on either January 9, 2018 or February 13, 2018 because she had "other primary reasons for seeing her that day."  Tr. at 62.  Petitioner also testified that she did not routinely discuss her pain with anyone, to include close friends and/or family.  *Id.*

Petitioner's son testified that his mother spoke with him a few days after her flu shot and told him that she had been experiencing pain since the vaccination.  Tr. at 96.  He additionally

testified that Petitioner experienced no shoulder symptoms between November 2016 and July 2017, while he was living with her.  *Id.* at 94.

Erin Short, Petitioner's niece spoke with Petitioner almost daily around the 2017/2018 timeframe.  Tr. at 103.  She never saw Petitioner have trouble with her left shoulder before her flu vaccination.  *Id.* at 103-04.  Ms. Short testified that Petitioner told her that the pain started a day or two after her vaccination.  *Id.* at 105.

Karen Brummer has known Petitioner for about five years.  Tr. at 109.  Petitioner visited her in Chattanooga in May of 2017, and Ms. Brummer did not observe Petitioner to have any problems with her shoulder.  *Id.* at 110.  Since the vaccine, Petitioner has experienced left shoulder pain.  Ms. Brummer first learned that Petitioner had a left shoulder injury around the 2019 timeframe.  *Id.* at 113-14.

Patricia Johnson, Petitioner's sister testified that she had never noticed Petitioner to have any trouble with her left shoulder prior to October of 2017.  Tr. at 117.  She then noticed that Petitioner had problems with her left shoulder around Thanksgiving of that year.  *Id.*  She doesn't remember when Petitioner began to complain about her shoulder pain.  *Id.* at 122.

Vicky Tataryn is one of Petitioner's friends.  She testified that before October of 2017, Petitioner never complained to her about shoulder pain.  Tr. at 124.  Sometime around the October 2017 timeframe, Petitioner told Ms. Tataryn that she was having shoulder pain.  *Id.* at 125. Petitioner never mentioned the cause of her shoulder pain.  *Id.* at 126.

## III.   Legal Standards Regarding Fact Finding

Petitioner bears the burden of establishing her claim by a preponderance of the evidence. 42 U.S.C. § 300aa-13(1)(a).  A petitioner must offer evidence that leads the "trier of fact to believe that the existence of a fact is more probable than its nonexistence before [he or she] may find in favor of the party who has the burden to persuade the judge of the fact's existence."  *Moberly v. Sec'y of Health & Hum. Servs.*, 592 F.3d 1315, 1322 n.2 (Fed. Cir. 2010) (citations omitted).

In order to make a determination concerning factual issues, such as the timing of onset of petitioner's alleged injury, the special master should first look to the medical records.  "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993); *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2006 WL 3734216, at *8 (Fed. Cl. Spec. Mstr. Nov. 29, 2006).  Medical records created contemporaneously with the events they describe are presumed to be accurate and complete.  *Doe/70 v. Sec'y of Health & Hum. Servs.*, 95 Fed. Cl. 598, 608 (2010).

Contemporaneous medical records generally merit greater evidentiary weight than oral testimony; this is particularly true where such testimony conflicts with the record evidence. *Cucuras*, 993 F.2d at 1528; *see also Murphy v. Sec'y of Health & Hum. Servs.*, 23 Cl. Ct. 726, 733 (1991), *aff'd*, 968 F.2d 1226 (Fed. Cir. 1992)(citing *United States v. United States Gypsum Co.*,

333 U.S. 364, 396 (1947) ("It has generally been held that oral testimony which is in conflict with contemporaneous documents is entitled to little evidentiary weight")). "Written documentation recorded by a disinterested person at or soon after the event at issue is generally more reliable than the recollection of a party to a lawsuit many years later." *Reusser v. Sec'y of Health & Hum. Servs.*, 28 Fed. Cl. 516, 523 (1993).

However, there are situations in which compelling oral testimony may be more persuasive than written records--for instance in cases where records are found to be incomplete or inaccurate. *Campbell*, 69 Fed. Cl. at 779 ("like any norm based upon common sense and experience, this rule should not be treated as an absolute and must yield where the factual predicates for its application are weak or lacking"); *Lowrie*, 2005 WL 6117475, at *19 ("Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent") (quoting *Murphy*, 23 Cl. Ct. at 733).

When witness testimony is used to overcome the presumption of accuracy afforded to contemporaneous medical records, such testimony must be "consistent, clear, cogent, and compelling." *Sanchez v. Sec'y of Health & Hum. Servs.*, No. 11-685V, 2013 WL 1880825 (Fed. Cl. Spec. Mstr. Apr. 10, 2013)(citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)). In determining the accuracy and completeness of medical records, the Court of Federal Claims has suggested four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1334 (Fed. Cir. 2014). A special master making a determination whether to afford greater weight to contemporaneous medical records or other evidence, such as testimony at a hearing must have evidence suggesting the decision was a rational determination. *Burns by Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993).

## IV.    Findings of Fact

I find that Petitioner experienced chronic left arm pain in the years before she received the flu vaccination that is the subject of this litigation. There are several reasons for this finding.

First, I do not find Ms. Rosenblum to be a credible witness. Concerning Exhibits 6 and 8, her explanation that she made 22 separate errors with respect to the arm where she focused her massage treatments is unreasonable. Additionally, I do not find it credible that Ms. Rosenblum remembered discrete massage therapy appointments years after the fact such that she was able to differentiate between treating Petitioner for left arm pain (on February 25 and 26, 2016, May 26, 2016, October 1, 2016) and right arm pain on every other date.

With respect to Exhibits 5 and 12, I find that Petitioner received massage therapy treatment for her left arm on October 2, 2017. In making this determination, I have concluded that the massage therapy record purporting to treat Petitioner on 10/12/2017 was improperly altered. *See*

Exs. 5 and 12. The check written by Petitioner to Ms. Rosenblum along with the text messages between Petitioner and Ms. Rosenblum provide strong evidence in support of this finding.

First, Petitioner wrote a check to Ms. Rosenblum dated October 2, 2017. A copy of that check is included, below:



Ex. 24 at 16. The fact that she wrote this check on October 2, 2017 is persuasive evidence that she had a massage therapy appointment on that same date. In fact, in examining the other checks that Petitioner wrote for massage therapy treatment, they <u>all</u> correlate with the appointment dates in Ms. Rosenblum's records. *See* Ex. 24 at 1-18.

In addition, it is clear from the text messages below that Petitioner scheduled her massage appointment with Ms. Rosenblum for October 2, 2017.



Ex. 23 at 3-4. In addition, Petitioner reached out to Ms. Rosenblum on June 25, 2018 via text. She asked Ms. Rosenblum if they could speak on the phone. See Ex. 23 at 9 (Petitioner texted, "Hi Lisa, I hope you're doing well. Could you please give me a call sometime? I am pursuing some legal action based on the left arm pain which ensued after my flu shot last October and was

11

wondering what, if any documentation you keep concerning my massages. Thanks so much. Sue"). *Id.* After their conversation, Ms. Rosenblum texted Petitioner the following message:



*Id.* This series of texts convincingly establishes that Petitioner received a massage on October 2, 2017. It further demonstrates that Ms. Rosenblum emailed this treatment record (Ex. 12) to Petitioner, and when it was emailed, this exhibit reflected that Petitioner received a massage on October 2, 2017. This point is further corroborated by the actual email sent on June 29, 2018 from Ms. Rosenblum to Petitioner.

---------- Forwarded message ---------
From: Lisa <█████████@yahoo.com>
Date: Fri, Jun 29, 2018 at 12_28 PM
Subject: Massage Therapy Treatment notes
To: █████████@gmail.com<█████████@gmail.com>
CC: Lisa Rosenblum <█████████@yahoo.com>

Ex. 25 at 1. Ms. Rosenblum attached the one-page treatment record to this email. Ex. 25 at 2. This version of the treatment record indicated that Petitioner received massage therapy on October 2, 2017. *See* Ex. 25 at 2. In other words, the record had not yet been altered to reflect treatment on October 12, 2017. Therefore, this particular treatment record was altered sometime between June 29, 2018 and the date it was filed into the record, January 14, 2019. *See* ECF No. 6.

Ms. Rosenblum's testimony that she changed the original of this one-page treatment record to indicate Petitioner received a massage on 10/12/2017 because she happened to be looking through her calendar and noticed her records were incorrect is not a believable explanation.[3] After the fact hearing, I ordered Petitioner to file "all text messages" and "all emails" between herself and Ms. Rosenblum. *See* Scheduling Order dated December 10, 2020, ECF No. 41. Petitioner then filed all such communications into the record. Exs. 23-30. There is no email from Ms. Rosenblum updating this October 2017 treatment record from October 2 to October 12. There is no text message from Ms. Rosenblum informing Petitioner of this change. If Ms. Rosenblum had

---

[3] I am additionally not persuaded by Ms. Rosenblum's representation that she maintains the altered version on Ex. 5 in her current records. *See* Ex. 30 at 8.

in fact made this change, it stands to reason that she would have emailed it to Petitioner so that Petitioner could have it filed in the record.  The fact that no such communication exists is further evidence that 1) Petitioner received a massage treatment on October 2, 2017; and 2) Ms. Rosenblum did not make the alteration to Exhibit 5.

Ultimately, I do not find any of the alterations to the massage treatment records to be credible evidence that Petitioner experienced right rather than left arm pain, or that she received treatment on October 2, 2017.  Instead, I credit the records as they were originally drafted.  These original, unaltered records demonstrate that Petitioner sought massage therapy treatment for left arm pain on 26 occasions between May 29, 2014 and October 2, 2017.  The preponderance of the evidence establishes that Petitioner consistently received treatment for left arm pain in the years prior to her vaccination; and further, that Petitioner presented to Ms. Rosenblum for massage therapy treatment on October 2, 2017.  Petitioner's left arm pain preceded her October 11, 2017 vaccination.

The following is therefore **ORDERED**:

A status conference is scheduled for Monday, March 15, 2021 at 10:00 (EST) to discuss this ruling.

**IT IS SO ORDERED.**

<u>**s/ Katherine E. Oler**</u>
Katherine E. Oler
Special Master